IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TWILA A. TREAT                                                                                   PLAINTIFF

V.                                          No. 13-5121

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Twila A. Treat, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on July 29, 2010, alleging an inability to work since November 1, 2005, due to shoulder problems. (Tr. 135-140, 143-144, 176, 187). An administrative hearing was held on March 29, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 27-64).

By written decision dated June 4, 2012, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - shoulder joint disorder, hearing loss, and mood disorder. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined

-1-

that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: The claimant can frequently lift and/or carry ten pounds, and occasionally twenty pounds, sit for a total of about six hours in an eight hour work day, and stand and/or walk for about six hours in an eight hour work day. The claimant cannot perform overhead work with the dominant upper extremity. The claimant cannot perform work that requires excellent hearing. The claimant can work where instructions are simple and non-complex; interpersonal contact with co-workers and the public is superficial and incidental to the work performed; the complexity of tasks is learned and performed by rote; the work is routine and repetitive; there are few variables; little judgment is required; and the supervision required is simple, direct, and concrete.

(Tr. 17). With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs Plaintiff would be able to perform, such as housekeeper, garment folder, and laundry worker. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 28, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.  Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in his credibility findings, and 2) The ALJ erred in inaccurately describing Plaintiff's daily activities and determining that Plaintiff could perform jobs as a housekeeper, garment folder, and laundry worker. (Doc. 10).

**A.   Credibility Findings**:

Plaintiff argues that the ALJ committed reversible error when he discredited Plaintiff's allegations about pain while finding she was possibly engaging in drug seeking behavior.

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a

AO72A
(Rev. 8/82)

whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 18). The ALJ discussed Plaintiff's daily activities, finding that Plaintiff had mild restrictions in activities of daily living. (Tr. 16). He noted that Plaintiff was able to feed herself and attend to personal hygiene without assistance. She was able to dress herself except for the occasional need of assistance with her bra. (Tr. 16). The ALJ further noted that Plaintiff lived with a friend, maintained her household, and performed household chores. (Tr. 16). The Court also notes that on December 14, 2009, Plaintiff was examined by Martin T. Faitak, Ph.D., a Clinical Psychologist, who reported that Plaintiff said she spent her time reading, cooking, working in a garden, going for walks and visiting with friends, watching movies, and playing games. (Tr. 275). She also reported she did her own chores and paid her own bills. (Tr. 275). In her Function Report - Adult - dated October 5, 2010, Plaintiff reported that she prepared simple meals, did laundry one item at a time, went outside twice a week for appointments or groceries, read, sewed, communicated with family over the computer, gardened, and went to the food bank and grocery store regularly. (Tr. 197-200).

The ALJ also noted in his opinion that Plaintiff first reported shoulder pain to Dr. Charlotte Endsley on August 31, 2005, explaining that she was yanked from the car by her ex-boyfriend about a week earlier, yet later claimed that the shoulder pain started when she was

lifting boxes at work as a cook at Fuel Zone on August 17, 2005. (Tr. 18). The ALJ also believed Plaintiff's continuous requesting of refills for Hydrocodone for shoulder pain and Xanax for anxiety "may reasonably be interpreted as drug-seeking behavior." (Tr. 18). The Court believes the ALJ perhaps took some license in drawing this conclusion, as no physician or record contains language indicating Plaintiff's behavior was "drug-seeking." However, the Court does note that on July 21, 2011, Gina Dickey, APN, at Boston Mountain Rural Health Clinic, did report that they agreed on pain management in a non-narcotic manner due to the length of time Plaintiff's condition had existed, and that she had an x-ray done a few days prior, with negative findings. (Tr. 363, 408).

The ALJ also mentioned that Plaintiff "cared for her three children." (Tr. 16). The Plaintiff takes issue with this statement, as does the Court. A review of the evidence indicates that in Plaintiff's October 5, 2010 Function Report - Adult - Plaintiff reported having three children who were all over 16 years old, and one was still with her "part-time.". (Tr. 195). In addition, on December 14, 2009, Dr. Faitak reported that Plaintiff was referred to him by the Washington County Department of Human Services for an evaluation of her social and emotional functioning. (Tr. 274). Plaintiff's youngest son was reported to be in foster care and Plaintiff wanted to obtain custody. (Tr. 274). At the hearing before the ALJ on March 29, 2012, Plaintiff testified that she lived with her boyfriend and that there were "no children at home." (Tr. 32). The Court does not equate the above-stated facts with "caring for her three children" and again, believes the ALJ took some license when he made this statement. However, the Court is also of the opinion that Plaintiff had sufficient other daily activities to support the fact that Plaintiff's alleged impairments did not limit her ability to function in the workplace to the extent

Plaintiff alleges.

Plaintiff testified at the hearing before the ALJ that at times, she did not take her prescribed medications because she had not been able to get to the doctors, or afford them. (Tr. 33-34). The Court notes that on December 10, 2005, when Plaintiff was examined by Dr. Endsley, physical therapy was strongly recommended, and Plaintiff said she did not have the "money for gas or time to go to physical therapy." (Tr. 248). However, from 2005 to one week before the date of the hearing, Plaintiff was able to afford to continue to smoke cigarettes - from 1/4 to 1 pack per day. (Tr. 56). Plaintiff's smoking habit discredits her disability allegations. See Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003).

Based upon the record as a whole, the Court finds that there is sufficient evidence to support the ALJ's credibility findings.

### B. Hypothetical Question:

Plaintiff argues that she is unable to perform the three jobs the ALJ concluded she would be able to perform.

At the hearing, the ALJ posed the following hypothetical to the VE:

> I would like you to consider a hypothetical person, younger individual, high school education, cannot return to any past relevant work, no transferable skills. This person can occasionally lift and carry at least 20 pounds, frequently at least 10, can sit for at least six hours in a day, stand/walk for at least six, cannot do overhead work on the dominant side, cannot do work requiring excellent hearing, but can hear well enough to avoid normal hazards in the work place. Can understand, remember, carry out simple routine repetitive tasks, can respond to usual work situations and ordinary work changes, can occasionally interact with supervisors, co-workers and the public, did you get all that?

(Tr. 59-60). In response, the VE responded that there would be jobs as a housekeeper, garment

folder, and laundry worker. (Tr. 61).

On August 26, 2010, Plaintiff saw her treating physician at Northwest Family Medicine - Dr. Daniel Jones - requesting refills on her medications, and Plaintiff reported that treatment for her panic attacks, shoulder pain, and back pain was satisfactory. (Tr. 393). In a Physical RFC Assessment completed by Dr. Karmen Hopkins on October 1, 2010, Dr. Hopkins concluded that Plaintiff would be able to perform light work, except that Plaintiff was limited in reaching all directions (including overhead), and no overhead reaching with right upper extremity. (Tr. 304-310). On October 21, 2010, a Mental Diagnostic Evaluation was performed by Mary Jane Sonntag, Psy.D. (Tr. 312-316). Plaintiff reported to Ms. Sonntag that the medication prescribed by Dr. Jones was helpful and she took it as directed "when I have them." (Tr. 312). When asked about her activities of daily living, Plaintiff said that she sometimes had to have someone "fasten my bra." (Tr. 312). It was also reported that Plaintiff could shop independently, handle her personal finances, and participate in social situations, such as church, and was generally capable of performing activities of daily living autonomously, except for fastening her bra. (Tr. 315). X-rays of Plaintiff's right clavicle and shoulder taken on July 8, 2011, revealed no acute fractures. (Tr. 346). On September 22, 2011, Plaintiff was seen at Northwest Family Medicine, requesting refills of her medications, and Plaintiff reported that she was satisfied with her current pain control, although she was unable to afford it. (Tr. 399). On October 31, 2011, it was reported by Gina Dickey, APN, that Plaintiff was able to remove her sweater without difficulty. (Tr. 405).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's

AO72A
(Rev. 8/82)

response to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the jobs of housekeeper, garment folder, and laundry worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 8th day of September, 2014.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)